UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

AUTUMN MISKO
12855 W North Lane
New Berlin, WI 53151,

    Plaintiff,                                         CASE NO.: 15-CV-1476

    v.                                               **JURY TRIAL DEMANDED**

INDEPENDENCEFIRST, INC.
540 S. 1st St.
Milwaukee, WI 53204,

    Defendant.

## COMPLAINT

NOW COMES, Autumn Misko (hereinafter "Plaintiff" or "Misko"), by her attorneys, The Previant Law Firm S.C. and Sara J. Geenen and for a cause of action against Defendant Independence First (hereinafter "Defendant" or "Independence First") states as follows.

### INTRODUCTION

1.  This is a civil action seeking equitable relief and compensatory and punitive damages, and attorneys fees pursuant to the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008, ("ADA"), Title VII of the Civil Rights Act, and the Family Medical Leave Act, 29 U.S.C. §2601 *et seq*. ("FMLA"). It is brought by plaintiff to obtain redress from defendant's discriminatory and

1

retaliatory practices with respect to Plaintiff's terms and conditions of employment and termination from employment.

## JURISDICTION AND VENUE

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1337 and 1343, and 29 U.S.C. § 2617(a)(2) and 42 U.S.C. § 12112.

3. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b) because all acts alleged as part of the Complaint took place in the Court's district.

4. Venue in this judicial district is proper by virtue of 28 U.S.C. § 1391(e) in that the alleged facts were committed in the Eastern District of Wisconsin, Plaintiff worked for Defendant in the Eastern District of Wisconsin and Defendant does business and maintains and office in the Eastern District of Wisconsin.

## PARTIES

5. Plaintiff Autumn Misko is a United States citizen and resides at 12855 W North Lane in New Berlin, Wisconsin.

6. Defendant IndependenceFirst is a Wisconsin non-stock corporation that provides services and advocacy to and on behalf of individuals with disabilities in southeastern Wisconsin. Defendant maintains an office at 540 S. 1st Street, in Milwaukee, Wisconsin.

7. At all relevant times, Defendant has employed more than fifty (50) employees at its Milwaukee office.

8. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. §12111(5), and Section 101(7) of the ADA, 42 U.S.C. §12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §2000e(g) and (h).

9. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. §12111(2).

10. Misko has complied with all jurisdiction prerequisites to action under the ADA by timely filing a charge of discrimination with the Equal Employment Opportunities Commission and receiving "Notice of a Right to Sue" from the EEOC by letter dated September 25, 2015. A copy of the Charge of Discrimination which Plaintiff filed is attached hereto as Exhibit A. A copy of the Notice of Right to Sue is attached hereto as Exhibit B.

11. Misko has complied with all jurisdictional jurisdiction prerequisites to action under the Civil Rights Act by timely filing a charge of discrimination with the Equal Employment Opportunities Commission and receiving "Notice of a Right to Sue" from the EEOC by letter dated on or around December 3, 2015. A copy of the Charge of Discrimination which Plaintiff filed is attached hereto as Exhibit C. A copy of the Notice of Right to Sue is attached hereto as Exhibit D.

**FACTS**

12. Misko began working on a full-time basis for Defendant in 2005 as a Resource Center Specialist, and was promoted to Lead Specialist in 2011. Misko's duties included managing and implementing Resource Center and Library programs, such as coordinating the provision of information and referral services to consumers, staff and community members, ordering, maintaining, and updating physical and electronic resource materials, advising and instructing individuals on how to use software or the Internet with the Assistive Technology employee and Resource Center coworkers; attending public hearings and other events to educate public officials on issues relating to independent living; presenting testimony on disability issues

by telephone or in person at the local, state, and federal levels by contacting legislators; and attend management activities, community advocacy and policy events.

13. Misko was an employee within the meaning of 29 U.S.C. §12111(4) of the ADA.

14. In each of her annual performance reviews, including a performance review on January 27, 2015, Misko's supervisors acknowledged that Misko met or exceeded the Defendant's expectations related to her job performance and attendance.

15. Misko is legally blind, which is an actual disability. She also has a record of disability and was perceived by Defendant as an individual with a disability.

16. Misko was a qualified individual with a disability.

17. Misko is unable to read standard-size text and is unable drive, thus limited in mobility. Misko magnifies text and makes other adjustments to her computer and uses magnification to read text. In addition, and for the duration of her employment with Defendant, Misko arranged transportation to the workplace via various modalities including coworkers, family members, or friends, and relied on flexible scheduling and the occasional day working from home to address her disability-related mobility and transportation issues.

18. Despite pre-arranging transportation to and from work, occasionally the person who had agreed to drive Misko to or from work would not arrive or would cancel due to sickness or vacation, or for other unanticipated reasons.

19. The Defendant knew that Misko's disability created mobility and/or transportation barriers.

20. The Defendant occasionally helped Misko arrange for transportation to the office or another job-related event when a transportation barrier would have otherwise prevented Misko from attending an event or completing a critical job duty.

21. For over nine (9) years prior to January 2015, the Defendant, by supervisor Deb Langham, accommodated Misko's transportation and/or mobility barriers by permitting Misko flexible scheduling and allowing Misko to work remotely, from home, up to twice per month.

22. The Defendant also knew that, for several years preceding her discharge, Misko requested and was permitted to occasionally work from home when she encountered disability-related transportation barriers, and for a variety of other reasons with her supervisor's approval.

23. The Defendant provided Misko with software and a specialized internet connection so that she could access her work computer from home, enabling Misko to work from home; Defendant provided upgrades to her home system as recently as June 2014.

24. Misko was also permitted to perform other work from home after hours when it was necessary to timely complete a task, or for other reasons, with the approval of her supervisor.

25. Through at least January 27, 2015, Misko's flexible schedule, remote work station, and other technology allowed Misko to complete her job duties even when she encountered transportation difficulties or was unable to work at the Defendant's offices.

26. At all relevant times, the Defendant permitted and continues to permit other employees to work from home during inclement weather, personal illness, or familial illness, or for a variety of other reasons with supervisor approval.

27. In June 2014, Misko gave birth to a child. The Defendant agreed to and approved a twelve (12) week maternity leave for Misko under the Family Medical Leave Act "(FMLA")" that comprised of several weeks of leave, taken consecutively, followed by a reduced/intermittent work schedule so that Misko took the remaining portion of her leave was taken one or two days per week, through the end of December 2014.

28. When Misko returned to work in August 2014 on a reduced basis, she requested, and her supervisor approved, a modified daily work schedule to accommodate Misko's transportation schedule; as a result, Misko's regular work schedule was 7:30 a.m. to 4:30 p.m.

29. After Misko returned to work in August 2014 following the birth of her child, Langham permitted Misko to work from home due to disability-related transportation barriers consistent with the Defendant's established practice.

30. Throughout her employment with the Defendant, Misko met or exceeded all of the Defendant's expectations with respect to her job performance.

31. Misko returned to work full-time following her maternity-related FMLA-leave on or around January 2, 2015.

32. In January 2015, Misko was assigned a new supervisor, Marion Ecklund, who immediately rescinded Misko's work-from-home accommodation when Misko requested that she be able to work from home due to a transportation issue, and further insisted that in such situations, Misko use a vacation day.

33. On January 27, 2015, Defendant by Ecklund and Langham gave Misko her annual performance evaluation and noted that Misko exceeded its expectations in nearly all aspects of her job performance, and noted Misko's attendance met the Defendant's expectations.

34. During the January 27th meeting, Misko requested that the work-from-home accommodation be reinstated so that, if the need arose, she could work from home when disability-related transportation difficulties arose, no more than two days per month; Ecklund refused and instead insisted Misko take vacation in the event a disability-related transportation challenge arose.

6

35. Shortly thereafter, the Defendant insisted that Misko not perform any work from home on days she used paid time off, regardless of the reason.

36. On or around January 27, 2015, Defendant, by its agents, also stated that Misko's absence from the office created complaints from staff and consumers seeking services.

37. Two days after Misko requested that her limited work-from-home accommodation be reinstated for disability-related transportation reasons, Ecklund began claiming that Misko's absences were excessive.

38. On or around February 2, 2015, Misko met with Kathy Acevedo, the Defendant's Human Resources Manager, to request that flexible scheduling and the limited work-from-home accommodation for disability-related transportation barriers be reinstated and to contest Ecklund's claim of excessive absences.

39. On February 4, 2015, Misko formally made her request to Acevedo that the reasonable accommodation she had previously been permitted – working from home up to twice per month in the event she faced disability-related transportation challenges, and flexible scheduling – and explained to Acevedo that her job duties had been constant over the years, that she had been permitted to work from home when disability-related transportation challenges occasionally arose and that the Defendant had provided her with the equipment she needed to work from home in such situations, and that employees in Misko's department rotated coverage of duties when their co-workers were absent.

40. On or around February 9, the Defendant formally denied Misko's disability-related accommodation request, threatened to physically remove Misko's remote computer access that allowed her to work from home, stated that Misko's child care arrangements were unsatisfactory because Misko had occasionally taken paid time off when circumstances left her

7

Case 2:15-cv-01476-NJ    Filed 12/11/15    Page 7 of 15    Document 1

without childcare on a work day, and insisted that Misko arrange fool-proof transportation and childcare by March 5, 2015, or face unspecified consequences.

41. After threatening to remove Misko's remote computer access, the Defendant refused to permit Misko to work from home, even though the Defendant permitted other employees to work from home or participate in conference calls from home for a variety of reasons including, but not limited to, the employee's use of paid time off, transportation problems, or occasional childcare difficulties or illness.

42. In March 2015, the Defendant disciplined Misko for requesting permission to perform some work from home, regardless of the circumstances or reason, even though the Defendant permitted other employees to work from home for a variety of reasons and even though the Defendant did not discipline other employees for working from home during the work day or for working from home after hours, changed Misko's work hours so that they no longer corresponded with her previously-arranged transportation with co-workers, and threatened Misko with a demotion. Defendant issued a final written warning that indicated that the Defendant changed its policy with respect to Misko's ability to use sick or vacation time when she could not be in the office as of the date of Misko's return from FMLA.

43. On or around March 11, 2015, Defendant told Misko that her job required her to be physically present in the Resource Center from 8 a.m. to 4:30 p.m., daily, even though Misko's job duties routinely caused her to be out of the Resource Center and/or out of the Defendant's offices.

44. The Defendant's refusal to allow Misko a flexible schedule and refusal to allow Misko to perform any work from home negatively affected Misko's ability to perform her job and complete work that she would have been able to, and in the past did, complete from home.

8

Case 2:15-cv-01476-NJ   Filed 12/11/15   Page 8 of 15   Document 1

45. In response to the final written warning, Misko filed an internal grievance that also raised her concerns about the continued refusal to consider her accommodations requests, the retaliatory discipline and discriminatory treatment in conditions of employment.

46. After Misko filed the internal grievance, the Defendant, by Ecklund and others, initiated additional punitive actions against Misko, including but not limited to restricting the days and times Misko could scheduled doctor's appointments.

47. The Defendant failed to justify its decision to restructure Misko's position to require a near-permanent presence in the Resource Center in light of its previously-permitted, and Misko's renewed request for, accommodations.

48. On March 17, the Defendant offered Misko a demotion to a part-time, two-day per week position but was told that the Defendant would not negotiate or accommodate transportation issues that might arise. Because the Defendant refused to address Misko's concerns related to occasional transportation barriers, Misko did not accept the two-day per week position.

49. After Misko declined the two-day-per-week position, she was told that she could not use any more of her earned paid time off.

50. On April 8, 2015, because Misko was no longer permitted to use paid time off for any reason and wanted very much to remain employed by the Defendant, Misko asked whether the two-day per week position was still available. She was told it was not.

51. On April 14th, 2015, the Defendant met with Misko and told her that position had been "restructured" and required that she be in the Resource Center at all times, but that her duties had basically remained the same. Misko's job duties routinely took her out of the office and/or made her unavailable even when she was in her office.

9

52. During the April 14th meeting with Ecklund, the Defendant again stated that Misko's coworkers complained about her absences during the fall and winter of 2014 and that those complaints necessitated that Misko now ensure her office door was open and that she was present in the office during all working hours.

53. After returning from maternity leave, from August 2014 until approximately April 2015, Misko expressed breast milk in her office because it was a private place and because her phone and computer were available and equipped with the disability-related assistive technology aids that allowed her to complete work while she was pumping, as had been the arrangement following Misko's first pregnancy two years earlier.

54. Employees were not required to notify their supervisors when they took breaks.

55. In approximately February or March 2015, around the same time Misko was requesting the reinstatement of her limited work-from-home accommodation, the fact that Misko took short breaks during the workday to express breast milk for her infant became an issue for Ecklund who complained about Misko's private office door being closed and about Misko being unavailable for short periods of time to greet customers or staff entering the Resource Center.

56. As a result of Ecklund's complaints, Ecklund insisted that, beginning April 20, 2015, Misko was required to inform a supervisor of every instance she needed to express breast milk ("pump") and that she could only pump in a small room across the building and far removed from the Resource Center, which would cause Misko to spent greater amounts of time away from the Resource Center and prevent Misko from completing work while pumping.

57. The Defendant has allowed other employees to complete work while pumping.

58. On April 17, 2015, the Defendant told Misko that she could only take vacation time in week increments; this new rule would prevent Misko from using an occasional day of

vacation when she encountered a transportation barrier that made it difficult to get to the Defendant's office.

59. The Defendant did not require other staff to take vacation or other paid time off in week increments.

60. On April 20, 2015 Misko informed Ecklund and Acevedo by e-mail that she felt like she was being harassed by the Defendant as the result of the grievance and her disability-related work-from-home and flexible scheduling accommodation requests and the circumstances related to pumping.

61. On or around April 14, 2015, Misko sent a letter to the EEOC detailing her charge of discrimination and retaliation; the charge was filed on or around May 14, 2015.

62. The Defendant terminated Misko's employment on April 21, 2015.

63. Following her termination, the Defendant paid Misko for 20 hours of accrued, unused paid time off.

**COUNT I**
DISCRIMINATION, RETALIATION, AND DISCHARGE ON THE BASIS OF DISABILITY
42 U.S.C. §§ 12112, 12223

64. In support of her first count, Misko re-asserts the allegations recited above and fully reincorporates those paragraphs by reference.

65. The Defendant was able to make, and made, reasonable accommodations for Misko for years but rescinded those accommodations and refused to provide any further accommodation to assist Misko in the performance of her duties in violation of the ADA.

66. The Defendant failed to engage in an interactive process with Misko related to the accommodation of her blindness-related transportation barriers in violation of the ADA.

67. The Defendant failed and refused to provide Plaintiff with the reasonable accommodations which she requested in violation of the ADA.

68. The Defendant, by its agents, routinely and repeatedly interfered with Misko's ability to complete her job duties, in retaliation for Misko's request for accommodation and complaints about the Defendant's failure to accommodate her disability in violation of the ADA.

69. The Defendant's refusal and failure to accommodate resulted in Misko being treated discriminatorily with respect to conditions of employment in violation of the ADA.

70. The Defendant deviated from its established practice and assigned Misko new job duties despite knowledge of Misko's disability-related transportation barriers, without reason, in violation of the ADA.

71. By the foregoing actions, the Defendant created a hostile work environment, in violation of the ADA.

72. The Defendant terminated Misko because of her disability and/or in retaliation for her requests for reasonable accommodations and her grievance and protests that she did not receive reasonable accommodations in violation of the ADA.

73. The adverse actions against Misko and Misko's termination were motivated in whole or in part by her engaging in protected activity and/or because or her disability in violation of the ADA.

74. As a result of the Defendant's discriminatory practices, the hostile work environment, and because of its retaliatory practices as described herein, Misko has suffered a loss of wages and benefits, mental duress and anguish, and embarrassment, and is entitled to punitive and compensatory damages.

## COUNT II.
### FMLA, 29 U.S.C. § 2601 *et seq.*

75. Misko realleges and incorporates by reference paragraphs 1 through 74.

76. Misko was entitled to leave under FMLA at the time of the birth of her daughter in June 2014.

77. The Defendant discriminated against Misko with respect to conditions of employment in retaliation for Misko's use of FMLA.

78. The Defendant unlawfully discriminated against and/or retaliated against Misko in terms and conditions of employment for having exercised her rights under FMLA.

79. The Defendant's unlawful discriminatory and/or retaliatory actions against Misko caused Misko's discharge.

80. By the foregoing actions, the Defendant created a hostile work environment, in violation of the ADAAA.

81. By such actions, the Defendant engaged in intentional discrimination against Misko with malice or reckless indifference to their federally protected rights.

## COUNT III
### DISCRIMINATION, RETALIATION ON THE BASIS OF SEX AND PREGNANCY
### 42 U.S.C. § 2000e-5(f), *et seq*

82. Misko realleges and incorporates by reference paragraphs 1 through 81.

83. Defendant has discriminated against Misko in violation of Title VII because of or on the basis of sex and/or pregnancy, childbirth, or pregnancy-related medical conditions.

84. Misko was singled out for different treatment as the result of her sex, pregnancy, pregnancy-related leave, and/or pregnancy-related medical conditions.

85. The Defendant's treatment of Misko was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Misko's rights.

86. As a result of the Defendant's discriminatory practices, the hostile work environment, and because of its retaliatory practices as described herein, Misko has suffered a loss of wages and benefits, mental duress and anguish, and embarrassment, and is entitled to punitive and compensatory damages, and costs and attorneys' fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. Damages equal to the amount of any wages, employment benefits and other compensation, with interest, denied or lost by reason of Defendant's unlawful acts.

B. An additional amount as liquidated damages equal to the sum of the amount of lost wages, benefits and other compensation as set forth above and interest thereon pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

C. Compensatory and punitive damages for the injury Plaintiff suffered as a result of his forced termination by Defendant and Defendant's harassing and retaliatory conduct toward him.

D. Liquidated damages an amount equal to the foregoing damages by reason of Defendant's willful conduct.

E. Reinstatement to her prior or equivalent position.

F. Reasonable attorney's fees including litigation expenses and costs incurred in bringing this action.

G. Such other and further relief as the Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff demands a jury trial in this case.

Dated this 11th day of December, 2015.

                                        s/ Sara J. Geenen
                                 Sara J. Geenen (Wis. Bar No. 1052748)
                                 THE PREVIANT LAW FIRM, S.C.
                                 1555 North RiverCenter Drive, Suite 202
                                 Milwaukee, WI 53212
                                 (414) 271-4500
                                 (414) 271-6308 (fax)

                                 ATTORNEYS FOR PLAINTIFF